MISSOURI PACIFIC RAILROAD COM-
PANY, Appellant,

v.

C. J. HESSE, Appellee.

No. 14553.

Court of Civil Appeals of Texas.

San Antonio.

June 14, 1967.

Rehearing Denied July 19, 1967.

Boyle, Wheeler, Gresham, Davis & Gregory, Bond Davis, San Antonio, for appellant.

Jim Brannon, D. L. McClure, Houston, Davis, O'Connor & Pullen, San Antonio, for appellee.

CADENA, Justice.

This is an action by plaintiff, C. J. Hesse, under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., to recover for personal injuries sustained by him during the course of his employment with defendant, Missouri Pacific Railroad Company. The trial court, in conformity with the verdict of the jury, entered judgment awarding plaintiff $71,170.00 for past and future pain and suffering, loss of earnings from the date of injury to the time of trial, and impairment of future earning capacity, plus $4,870.00 for past and future medical expenses.

Defendant filed a motion for new trial on the ground of newly discovered evidence, and here asserts that the trial court abused its discretion in overruling such motion. The newly discovered evidence consists of the fact that, after the trial, plaintiff returned to work for defendant and actually worked, and was paid for, a total of thirty-seven hours.

Plaintiff's petition in this case alleged that, as a result of his injury, his future earning capacity had been totally destroyed, and prayed for recovery of $225,000.00. The medical testimony pertaining to the disabling effect of plaintiff's injuries was in sharp conflict. However, such evidence established that plaintiff was injured on October 5, 1962, sustaining fractures of the left leg and in the pelvic area. He was hospitalized for sixteen days, and walked with the aid of crutches until the middle of December, 1962. He continued to experience pain in the left leg and in the spine and was examined by several doctors. In August, 1963, he underwent spinal surgery in Houston. The surgeon testified he found that a disk in plaintiff's back was protruding to the rear, pinching a nerve root between the disk in front and a bone in back. The surgeon performed what he described as a bone "fusing" or "welding" operation, designed to prevent movement in the affected area. Post-operative examinations revealed that the "welding job" had not "taken," and that there was still movement in the affected area, resulting in continued irritation of the nerve root. In April, 1964, a second operation was performed. The surgeon testified that the second operation was a complete success and that, at the time of trial in May, 1966, plaintiff was physically able to perform his normal duties as a machinist or electrician with defendant railroad.

During the trial plaintiff testified that he still suffered pain in the back and

left leg, and that he was unable to perform the ordinary duties of a workman. He produced medical testimony to the effect that he was still suffering from an "involvement" of the fifth lumbar nerve root on the left side. This involvement was described as a pressure on the nerve root as it emerged from the spine, causing an irritation of such nerve root, with consequent pain. Plaintiff's medical expert testified that, as long as this condition continued, plaintiff would be unable to perform any labor involving climbing, stooping or bending.

The evidence at the trial disclosed that plaintiff was able to drive an automobile and had, in fact, driven from Houston to San Antonio, and back to Houston, on several occasions.

The following facts concerning the post-trial events on which defendant based its demand for a new trial are undisputed: The case was tried by a Bexar County District Court in San Antonio. The verdict of the jury was received by the trial court at about 2:30 p. m., on Tuesday, May 10, 1966. Late that night the plaintiff drove to Houston, the city of his residence, arriving there "way in the morning" of Wednesday, May 11, 1966, and at about 9:30 a. m. on that day he discovered in his mailbox a letter from defendant, dated May 9, 1966, advising him of the existence of an opening for a permanent position of machinist at the defendant's Diesel shop in Houston and requesting that he report to work. The letter stated that if plaintiff did not report for work within fifteen days his name would be removed from the "Seniority Roster." Plaintiff reported at defendant's Houston yards the same day and was told to return the following day to secure a form so that he might undergo a physical examination. He returned to the yards on Thursday, May 12, 1966, was given the necessary form, and, as instructed by defendant, presented himself to Dr. William A. Palm for a physical examination. Dr.

Palm certified that plaintiff was physically able to perform the duties of a machinist, and plaintiff reported for work at 7:00 a. m. on Friday, May 13, 1966. He was on the job for eight hours on each of three successive days, Friday, May 13, Saturday, May 14, and Sunday, May 15. He did not report to work on May 16, May 17, or May 18. On Wednesday, May 19, he worked eight hours. On Thursday, May 20, he reported to work at 7:00 a. m. and worked until noon, at which time he left the job, and since which time he has not worked for defendant or anyone else.

At the hearing on defendant's motion for new trial, defendant introduced motion pictures taken of plaintiff after he had returned to work. The record discloses that it took about three minutes and twelve seconds to exhibit the two reels of film, with the first of the two reels being shown at slower than normal speed.

■ Although reversals have followed in many cases where a motion for new trial based on newly discovered evidence has been denied by the trial court, such motions are addressed "very much to the discretion of the trial court, and that an order overruling such a motion will not be reversed unless it appears that the court below had not exercised its discretion according to the established rules of law." Forshagen v. Payne, 225 S.W.2d 229, 231 (Tex.Civ. App., 1949, no writ).

■ After reviewing the entire record in this case, we conclude that the evidence relating to post-trial events in this case "was not 'dissimilar to that used upon the trial 'and was' additional evidence of the same kind to the same point' as that introduced at the trial." New Amsterdam Casualty Co. v. Jordan, 359 S.W.2d 864, 867 (Tex.Sup., 1962). The newly discovered evidence does no more than establish that, within three days after the trial, plaintiff, in answer to a summons

from defendant, reported for work.[1] During the trial of the case plaintiff testified that during the spring of 1965, about one year prior to the trial, the same Dr. Palm who declared him able to work on May 12, 1966, certified that he was physically able to perform the duties of a machinist or electrician. Plaintiff then drove to San Antonio, since there was no opening for either of those job classifications in Houston, and applied for work at defendant's San Antonio yards. He remained in San Antonio for several days seeking employment and, finding that there were no openings in that city, he returned to Houston. Upon his arrival in Houston, he reported to defendant's yards, gave them his name and address, and stated that he was ready to return to work.

We believe that this case comes within the rule applied by the Supreme Court of Missouri in Curry v. Thompson, 247 S.W. 2d 792, 31 A.L.R.2d 1225 (1952). There, plaintiff, who had been injured while in the course of his employment with the Missouri Pacific Railroad Company, produced evidence tending to show that he was physically unable to work or to do any kind of manual physical labor, and that he was permanently disabled for performing the duties of a railroad switchman. About four months after the trial, plaintiff applied to go back to work for the railroad as a switchman. He underwent a physical examination and returned to work, working a total of 42 days during a 56-day period. The Missouri Supreme Court held that evidence of such post-trial facts was not of such a nature as to entitle defendant to a new trial. The following language of the Missouri Court was quoted with approval by our Supreme

Court in New Amsterdam Casualty Co. v. Jordan, supra, 359 S.W.2d at 867:

" * * * In the instant case the questions made an issue by the evidence (and now pertinent) are as to the extent and severity of plaintiff's injuries, i. e., whether such injuries are so permanent as to prevent plaintiff ever returning to his former railroad switching employment. Those issues were here litigated and there was expert *opinion* evidence upon every side of those issues. * * * But in our case here the permanency of plaintiff's injuries, their extent and severity, and whether he could ever return to his former railroad switching employment were all issues *of the evidence.*"

Although plaintiff worked for 37 hours after the trial, the motion pictures introduced by defendant at the hearing on its motion depicted plaintiff's activities during periods totalling less than four minutes of the 37 hours he worked. As the trial court pointed out, the motion pictures showed plaintiff holding his back and walking like a "spavined" horse. Plaintiff testified that, after working three days, he was unable to report to work on the fourth day because of the pain he was experiencing. He also testified that he finally quit working at noon on Thursday, May 20, 1966, because of the pain in his back. Under these circumstances, the evidence relied on by defendant cannot be said to be of such probative force as to justify the conclusion that defendant has not had its day in court.

Defendant relies strongly on the holding by our Supreme Court in Missouri-Kansas-Texas R. Co. v. Evans, 151 Tex. 340, 250 S.W.2d 385 (1952). There plaintiff alleged and testified that he suffered an

---

1. We disregard the testimony of Dr. Palm, given at the hearing on the motion for new trial, relating to his examination of plaintiff on May 12, 1966, and the conclusions he drew from such examination. The evidence at the trial showed that Dr. Palm had examined plaintiff prior to the trial and had concluded that plaintiff was able to work. Dr. Palm's opinion relating to plaintiff's condition was known to defendant and cannot be considered newly discovered evidence.

eye injury when particles of rust and dirt from a defective coupling device blew into his eye. After trial, his eye was removed by surgery, and it was then discovered that the eye was cancerous. The Supreme Court held that the trial court erred in not granting a new trial so that such evidence could be considered by a jury. However, the Evans case is easily distinguishable from the case before us. In Evans, as the Supreme Court pointed out, there was no evidence during the trial pointing to cancer as a possible cause of plaintiff's disability. 250 S.W.2d at 393. Such is not the case here. We do not have before us evidence concerning an alternative cause of plaintiff's incapacity, but merely further evidence of the fact, which had been developed during the trial, that plaintiff was willing to report for work when requested to do so by defendant.

▮ Courts should be reluctant to order a new trial, and thus permit the relitigation of once litigated issues, unless the post-trial facts are of such decisive and conclusive character, as in Evans, as to render a different result reasonably probable. While it is true that the fact that plaintiff actually returned to work for a period of thirty-seven hours after the trial is a new fact which could not have been developed at the trial, it did not "bring to light a new and independent truth," and it cannot be said that the probative force of the new evidence partakes of that "conclusiveness and decisiveness upon the merits of the case to the extent of showing that justice has not been attained" or that "the requirements for overriding the public policy requiring finality of trials have been met." New Amsterdam Casualty Co. v. Jordan, supra, 359 S.W.2d at 867–868. Nor does the new evidence show a fraudulent purpose on plaintiff's part. Cf. Papathanasi v. Reiter, 270 App.Div. 308, 60 N.Y.S.2d 33, 35 (1945).

The judgment of the trial court is affirmed.