[L. A. No. 3983. Department One.—May 18, 1917.]

## A. I. TRACY, Respondent, v. WM. M. SMITH et al., Appellants.

FRAUDULENT REPRESENTATIONS—SALE OF CITRUS ORCHARD—ADEQUATE WATER SUPPLY—ABSENCE OF FROST—RESCISSION.—Fraudulent representations of a vendor to a contract for the sale of land planted to young citrus trees, to the effect that a company furnishing water to the land for irrigation had an ample supply, that the water system used for distribution was in such perfect condition that for several years the cost of water to the users would be only the cost of production, that the land was located in a district that was absolutely frostless, and that damage by frost had never been known in the neighborhood, warrant a rescission of the contract by the vendee, a woman of little business experience, who knew nothing of the subjects of the representations, if she relied on the statements believing them to be true and because thereof was induced to enter into the contract.

ID.—EXPRESSIONS OF MERE OPINION.—Matters which might otherwise be only expressions of opinion, when stated as accomplished facts by one of the parties to a contract and accepted and relied upon by the other as such, may, and often do, become the basis of actions for fraudulent representations.

ID.—OPPORTUNITY FOR INVESTIGATION BY VENDEE.—In the absence of circumstances causing the vendee to question the truth of such representations of the vendor, the mere fact that she had opportunity for inquiry and investigation which, if made, would have disclosed the falsity of the representations, does not preclude her from the right of rescission.

ID.—LACHES OF VENDEE.—In an action by the vendee for a rescission, the defense of laches, if not raised in the trial court, cannot be urged for the first time on appeal, and is deemed waived if not pleaded.

APPEAL from a judgment of the Superior Court of Los Angeles County.   John W. Shenk, Judge.

The facts are stated in the opinion of the court.

Humphrey Marshall, and Frederick A. Preston, for Appellants.

W. C. Shelton, for Respondent.

VICTOR E. SHAW, J., *pro tem.*—Action to rescind a contract whereby plaintiff agreed to buy from defendants for a stipulated sum a five acre tract of land, planted to one year old citrus trees, and to recover the sum of one thousand five hundred dollars paid defendants in the purchase price thereof, upon the ground that plaintiff was induced to make the contract and payment of purchase money thereon through and by means of false and fraudulent representations made by defendants as vendors of the same.  From a judgment in favor of plaintiff defendants appeal.

It appears without controversy that plaintiff, a widow, having inherited a small sum of money from the estate of a deceased brother, conceived the idea of investing it in an orange grove.  She was introduced to defendant D. A. Mizener, who with Wm. M. Smith constituted the copartnership of Smith & Mizener, which owned a subdivision of land in Los Angeles County called Orchard Dale.  To secure a supply of water for the irrigation of the subdivision they organized a water company, which, at the time of the transaction with plaintiff, had installed a water system consisting of wells and some twelve miles of pipe-lines for the development and distribution of water, shares in which company were allotted to and sold with each tract of land.  Plaintiff was shown a lot designated on the map of said subdivision as Lot 50 of Block 3, containing approximately five acres, which in May, 1912, had been planted to orange trees, and for the purchase of which, together with ten and one-half shares of stock in said Orchard Dale Water Company evidencing her right to the use of water

thereon, she, on July 8, 1912, entered into the contract which
it is sought to rescind.

It is conceded that prior to the time that plaintiff entered into
the contract, the defendant D. A. Mizener represented to her
that the Orchard Dale Water Company had then developed an
unlimited supply of water amply sufficient for any use which
the tract and the lots therein would ever require, and that
the plant and water system through and by means of which
the water was distributed was perfectly built and equipped
and in such splendid condition that, barring minor repairs
thereto, the cost of water to the stockholders in said company
for the first five years would be the cost of production only;
that the land was located in a district that was absolutely
frostless; and that damage by frost had never been known in
the neighborhood, all of which representations, so made to
plaintiff by Mizener, the court found to be untrue and known
by him to be untrue when made.  The court further found
that plaintiff was a woman of little experience in business and
knew nothing of the subjects of representation, other than the
statements so made to her by defendant Mizener, upon which
she relied believing them to be true, and, because thereof, she
was induced to and did enter into the contract.

Notwithstanding the repeated declarations of this court
that, where there is a substantial conflict of evidence touch-
ing an alleged fact, a finding thereon by the trial court will
not be disturbed, appellants attack the findings for want of
sufficient evidence to support them.

To quote at length the testimony would be an idle task.

Suffice it to say that an examination of the record, while
showing a conflict in the testimony offered, exhibits ample evi-
dence tending to prove each and every fact found of which
complaint is made.  That the locality was not free from frost,
but subject to killing frost, appears from the fact, conclu-
sively shown, that all the trees, several hundred in number,
planted in the succeeding spring upon said lot, though pro-
tected by paper wrappings, were during the winter of
1912–13 killed, and that contrary to defendant's statement
that "a damaging frost had never been known in that neigh-
borhood," evidence was received which strongly tended to
prove that during the winter immediately preceding the mak-
ing of the contract severe frosts occurred in that locality, do-
ing great damage to the orchards and destroying many of

the newly planted orange trees, all of which facts were well known to Mizener.

The finding that the representations in regard to the supply of water and the condition of the distributing system were untrue is supported by evidence given by Mizener himself, who was a member of the board of directors of the Water Company. His testimony was to the effect that at the time he made the statements to plaintiff he knew that a large part of the distributing system had deteriorated to an extent that rendered it unfit for use; that it was necessary to immediately replace some six thousand feet of the main pipe-line, and that the condition and quality of the water in one of the wells was such that the use thereof would have to be abandoned, in connection with which was the testimony of the president of the Water Company to the effect that for a long time prior to September, 1913, the condition of the pipe-lines was such that from fifteen to twenty per cent of all the water pumped was lost by leakage; that in September, 1913, the board of directors determined it to be necessary to make repairs, install new pipe, and develop an additional supply of water at a cost to the stockholders of twenty-five thousand dollars. Indeed, it is impossible to perceive how the court could have reached any conclusion other than that the representations made by Mizener to plaintiff with reference to the water and distribution system were untrue.

Appellants contend that, conceding a sufficiency of evidence to support the findings, the representations so found to have been made were matters of opinion only, and hence, even if they were false and untrue, such fact constituted no ground for an action of rescission on the part of plaintiff. The condition of the water system, and whether or not a damaging frost had ever occurred in the locality, were material existing facts as to which, since the representations were positive and unqualified, the truth thereof should be established in the form made. In *Sheer* v. *Hoyt,* 13 Cal. App. 662, [110 Pac. 477], it is said: "Matters which might otherwise be only expressions of opinion, when stated as accomplished facts by one of the parties to a contract and accepted and relied upon by the other as such, may, and often do, become the basis of actions for fraudulent misrepresentations." (See, also, *Bickel* v. *Munger,* 20 Cal. App. 633, [129 Pac. 958].)

It is true that as a rule expressions of opinion, whether real or pretended, as to what may or may not occur in the future, or as to matters equally within the power of both parties to ascertain, are not deemed representations upon which, though admittedly false, an action can be founded. (*Winkler* v. *Jerrue,* 20 Cal. App. 555, [129 Pac. 804].) Hence, considered alone, the statement that the land was ''absolutely free from frost'' might be deemed merely a prediction or an expression of Mizener that in his opinion the locality would never be subject to frost. It was, however, a positive representation by one assuming to have knowledge of the subject, based upon a statement known by him to be false in fact, that ''a damaging frost had never been known in that neighborhood,'' which, if true, when made in connection with the statement that the property was absolutely frostless, warranted the making of the latter and gave it the character of a like statement of fact rather than a mere opinion. (*Muller* v. *Palmer,* 144 Cal. 305, [77 Pac. 954].)

It is next insisted that plaintiff is not entitled to recover because she had opportunity for making inquiry and investigations, the result of which, if made, would have disclosed the true condition of the water system, and the fact that during the previous winter severe frosts had occurred in the neighborhood, as a result of which much damage was done to the orchards and many of the young trees killed. There were no circumstances attending the transaction calculated to arouse the suspicion of an inexperienced woman without knowledge of the subject with which she was dealing, or cause her to question assurances from Mizener that what he told her in response to her inquiries would be the truth. There is no rule of law which, under the circumstances here shown, required plaintiff in dealing with defendant to have acted upon the assumption that he was dishonest, and the law will not deny her redress because she failed to act upon such assumption. ''The fraudulent vendor cannot escape from liability by asking the law to applaud his fraud and condemn his victim for his credulity.'' (*Strand* v. *Griffith,* 97 Fed. 854, [38 C. C. A. 444]; *Spreckels* v. *Gorrill,* 152 Cal. 383, [92 Pac. 1011]; *Eichelberger* v. *Mills Land and Water Co.,* 9 Cal. App. 628, [100 Pac. 117].)

The question of plaintiff's laches as a defense was not raised in the trial court, and hence should not, for the first time, be

urged here. Indeed, objection to the rescission on that ground, since not pleaded, is deemed waived. (Code Civ. Proc., sec. 434.) Moreover, if considered on the merits, the contention is ill founded, since it is shown that she did not discover that her trees were killed by the frost until March, 1913, and then learned of heavy frosts occurring in prior years. Shortly thereafter she consulted an attorney as to her rights, under whose advice she immediately took steps to secure redress for the deceit practiced upon her. Indeed, it was not until after the filing of the first complaint in the action that she learned of the fraudulent representations as to the condition of the water system.

The judgment is affirmed.

Sloss, J., and Shaw, J., concurred.